**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

45 SPIRITS LLC,

Plaintiff,

v.

ZOHAIR SULTAN and SAMEET PATEL,

Defendants.

Case No. ____________

# COMPLAINT

Plaintiff 45 Spirits, LLC ("Plaintiff"), by and through its attorneys, alleges upon personal knowledge as to its own acts and upon information and belief as to all other matters against Defendants Zohair Sultan and Sameet Patel ("Defendants") as follows:

## NATURE OF THE ACTION

1. This is an action for damages and injunctive relief arising from Defendants' tortious interference with Plaintiff's valuable business opportunity, fraudulent misrepresentation, misappropriation of Confidential Information and trade secrets, breach of fiduciary and confidentiality duties, civil conspiracy, violation of the Defend Trade Secrets Act, common law unfair competition, and unjust enrichment. Defendants engaged in a calculated scheme to obtain Plaintiff's Confidential Information under false pretenses and then use that information to divert the opportunity to themselves and the licensing entities they created. For purposes of this Complaint, "Confidential Information" means, without limitation, negotiated licensing terms and fee amounts, timing and sequencing of closing, investor pipeline, identity, and commitments, capitalization, equity structure, and

valuation, go to market and launch plans, vendor identities and pricing, supply chain, projected timelines, and proprietary label designs and brand assets not publicly disclosed. Defendants also copied and showed Plaintiff's proprietary label designs and brand assets, provided to them in confidence, to third party vendors in order to prepare their own launch of the same vodka product.

## PARTIES

2. Plaintiff 45 Spirits, LLC ("45 Spirits") is a Delaware limited liability company. 45 Spirits is owned 50 percent by Red Kingdom, LLC, a Wyoming limited liability company, and 50 percent by R&R Spirits, LLC, a Wyoming limited liability company.

3. Red Kingdom, LLC is wholly owned by Timothy Klintworth ("Klintworth"), an individual and resident of Illinois.

4. R&R Spirits, LLC is wholly owned by Rich DeCicco ("DeCicco"), an individual and resident of Florida.

5. Defendant Zohair Sultan ("Sultan") is an individual who resides in Florida and conducts business in Illinois and elsewhere.

6. Defendant Sameet Patel ("Patel" or "Sam") is an individual who resides in Florida and conducts business in Illinois and elsewhere.

## JURISDICTION AND VENUE

7. Plaintiff brings this action under the federal Defend Trade Secrets Act ("DTSA"). This Court has subject matter jurisdiction because this action arises under 28 U.S.C. § 1331 and 18 U.S.C. § 1836(b)(1) and (c).

8. Plaintiff also asserts claims arising under state common law. The Court has supplemental jurisdiction over those claims under 28 U.S.C. § 1367(a) because those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the U.S. Constitution.

9. This Court has personal jurisdiction over Defendants because each Defendant transacted business in Illinois, committed tortious acts in Illinois and/or outside Illinois causing injury in Illinois, and made communications directed to Illinois residents integral to the misconduct alleged.

10. Venue is proper in the Northern District of Illinois under 18 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District and Plaintiff suffered injury in this District, including negotiations, phone calls, and emails directed to Plaintiff's Illinois representatives, with business injury felt in this District.

## FACTUAL ALLEGATIONS

### Background

11. 45 Spirits is a business entity formed to pursue licensing opportunities in the alcoholic beverage industry.

12. In or around December 2024, 45 Spirits had successfully negotiated a licensing agreement with a licensor entity ("the licensor") for a vodka deal using the licensor's trademarks. 45 Spirits had written confirmation from the licensor's counsel that the agreement was final and ready to be signed upon payment by 45 Spirits of the upfront licensing fee.

13. The licensing agreement represented a valuable business opportunity for 45 Spirits.

14. The licensing opportunity had significant growth potential with projected valuations reaching hundreds of millions to billions of dollars. The Confidential Information described above was developed and maintained by Plaintiff at substantial expense and effort and was shared only with a limited set of recipients on a need to know basis.

**Valuation milestones**

15. As of December 12, 2024, the term sheet governing 45 Spirits' investment structure set its valuation at $46,666,666 pre-money and $66,666,666 post-money.

16. As of March 6, 2025, 45 Spirits had obtained investors' commitments in 45 Spirits at a $35,000,000 pre-money valuation and a $50,000,000 post-money valuation. 45 Spirits was prepared to close the week of June 9, 2025 at the $50,000,000 post-money valuation based on investors, who were ready to close, having committed $12,250,000 in letters-of-intent at that valuation.

17. Based on the performance and valuations of comparable celebrity spirits brands, 45 Spirits reasonably expected its valuation to reach the billions within the next few years.

**December 2024 initial confidential disclosures to Sultan and Patel**

18. On December 12, 2024, Klintworth spoke with Sultan, his friend of several years, by phone during three calls that totaled approximately forty-nine minutes. Klintworth disclosed that 45 Spirits had negotiated a confidential licensing agreement with the licensor and that it was ready to be signed upon payment of the upfront fee. Sultan

agreed to keep the information confidential. Sultan stated that he wanted to involve his associate Sam Patel and stated that Patel would also maintain confidentiality. Sultan promised that both he and Patel would sign non-disclosure agreements ("NDAs").

19. Later on December 12, 2024, Klintworth emailed Sultan from Illinois with the subject line "Confidential Vodka Deal Materials." The email attached documents for the limited purpose of confidential review. The materials included the already negotiated licensing agreement with detailed terms, a letter from the licensor's counsel confirming that the agreement was final and would be executed upon payment of the upfront licensing fee, a presentation deck, proprietary label designs and brand assets owned by 45 Spirits, confidential financial projections, and a term sheet describing equity structure and capital allocation which set 45 Spirits' valuation at $46,666,666 pre-money and $66,666,666 post-money. The materials were provided solely for confidential evaluation, were identified and communicated as confidential, and were shared only with a limited set of recipients on a need to know basis. Sultan, having acknowledged the confidential nature of these materials and having promised the completion of NDAs, shared them with Patel.

20. On December 13, 2024, Klintworth and DeCicco participated in an approximately twenty-minute group call with Sultan and Patel. Sultan and Patel confirmed that they had reviewed the materials, would keep them confidential, and would sign NDAs. Neither Sultan nor Patel signed the NDAs as they had promised.

**<u>May through June 2025: renewed interest, $5,000,000 representation, serial NDA requests, and delay tied to property closings</u>**

21. On May 13, 2025, Sultan texted Klintworth asking if there was still room in the deal. Sultan stated that he was selling properties and had a few million dollars available. Klintworth responded that closing was imminent and oversubscribed but that he

would check capacity. Klintworth emailed Sultan the NDA and requested prompt execution.

22. On May 20, 2025, unbeknownst to Klintworth, Patel incorporated an entity under the laws of Delaware for the purpose of pursuing licensing opportunities with the licensor. Patel later incorporated two related licensing entities in July 2025.

23. On May 21, 2025, Sultan texted that he had been traveling, that his property closings would settle in three weeks, and that he would reach out then. Klintworth responded that if Sultan was interested they should talk immediately and that 45 Spirits would work around Sultan's property closings by taking a binding commitment.

24. On May 22, 2025, Sultan told Klintworth by telephone that he and Patel had a group that wanted to invest $5,000,000 into 45 Spirits. Klintworth stated that all members of their group needed to sign the NDA. Sultan agreed to confidentiality and promised to have his group sign NDAs. Relying on his friendship with Sultan and Sultan's promise to have his group sign NDAs, Klintworth provided Confidential Information about the status of 45 Spirits' impending licensing agreement with the licensor, expected to close shortly at a $50,000,000 post-money valuation. Klintworth explained that 45 Spirits had $14,250,000 in letters-of-intent, including a letter-of-intent from the lead investor for $5,000,000, but needed to switch to a new lead investor who was able to immediately put in 3 to 5 million dollars to close the licensing agreement imminently. Klintworth then sent follow up texts to Sultan proposing a call with 45 Spirits' deal counsel after NDA execution.

25. Between May 24, 2025 and May 31, 2025, Klintworth and 45 Spirits' deal counsel resent the NDA to Sultan multiple times and requested the names and emails of the investor group so NDAs could be circulated.

26. Between May 26, 2025 and May 30, 2025, Sultan texted Klintworth detailed questions about timing of the investment into 45 Spirits, the $50,000,000 valuation, the structure of the investment, and closing logistics including when and how the closing would happen. Klintworth texted Sultan answers providing detailed information regarding valuation, licensing terms, structure, and closing logistics confirming the $50,000,000 post-money valuation. Klintworth texted Sultan offering for DeCicco to meet Sultan's group in Florida to move the process forward. Sultan texted Klintworth that he needed more time to close his property sales which were closing on June 19, 2025.

27. On May 29, 2025, Klintworth texted Sultan asking if he wanted to arrange a call with his buddies and if it was just Patel or others. Sultan texted Klintworth that his group included three or four people with a total of $5,000,000 separate from Sultan's own proposed $1,800,000 and that they wanted to form an entity for the investment into 45 Spirits. Klintworth texted Sultan that 45 Spirits would need an NDA from each of them, but if an entity was formed would only need an LOI from the entity.

28. On June 1, 2025, Klintworth left Sultan a message to call him regarding a change in lead investors to allow immediate closing of the licensing agreement.

29. On June 3, 2025, 45 Spirits received the $3,000,000 letter-of-intent from the new lead investor. Later that day, Klintworth texted Sultan confirming the total committed funds were now $12,250,000, that closing was being scheduled for the following week,

and again asked whether Sultan was in or out and requested immediate NDA execution that day.

**June 4, 2025 loss of the opportunity**

30. On June 4, 2025, while Klintworth was editing a draft email to the licensor's General Counsel to schedule closing for the week of June 9, 2025, the licensor's General Counsel called Klintworth and stated that the licensor had spoken with another group and decided to proceed with that group instead of 45 Spirits. The licensor's General Counsel stated that this had just happened out of the blue and was a completely new group.

31. Plaintiff later learned, upon information and belief, that Defendants created a competing licensing entity and used Plaintiff's Confidential Information including the exact negotiated terms and the upfront fee amount, as well as timing and financing status, to approach the licensor directly, to outbid Plaintiff, and to usurp the opportunity.

**August 2025: vendor meetings confirming misuse**

32. In August 2025, multiple third parties informed Plaintiff that they had met with Patel and Sultan. Those third parties were vendors that Defendants had approached to help Defendants launch the vodka product in October 2025. In those meetings, Defendants displayed vodka bottle designs bearing the licensor's trademark and label designs that used Plaintiff's proprietary designs and brand assets provided to Defendants in confidence.

33. Those third party vendors further reported that Defendants stated they had paid an upfront $10,000,000 fee to the licensor to obtain the license. This beat Plaintiff's upfront fee of $7,000,000 committed to the licensor, which Defendants knew from Plaintiff's Confidential Information.

**The wrongful interference and usurpation**

34. Defendants' discussions with Klintworth were a calculated ruse designed to obtain Confidential Information for their own benefit.

35. Defendants used the Confidential Information to divert the business opportunity with the licensor to themselves and the licensing entity they created in May 2025. This included offering a higher upfront fee to the licensor, after learning Plaintiff's exact terms, and copying and showing Plaintiff's proprietary label designs to vendors.

36. Using the proprietary information they wrongfully obtained from Plaintiff, Defendants interfered with Plaintiff's business expectancy with the licensor.

37. As a direct and proximate result of Defendants' interference, Plaintiff lost the licensing relationship with the licensor.

38. Defendants have unjustly enriched themselves by usurping the business opportunity that rightfully belonged to Plaintiff.

**DAMAGES**

39. The loss of the licensing agreement resulted in severe economic losses to Plaintiff.

40. Plaintiff lost an immediate equity position valued at $50,000,000.

41. At a conservative future valuation, Plaintiff's future lost equity is at least $300,000,000. At Plaintiff's expected future valuation based on comparable celebrity brands, Plaintiff's future lost equity is in the billions.

42. Plaintiff has been damaged in an amount to be proven at trial, but not less than $50,000,000 in equity and future expected value, plus additional damages for lost future profits and consequential harm.

## CAUSES OF ACTION

### COUNT I
### TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY

43. Plaintiff realleges and incorporates by reference paragraphs 1 through 42 as though fully set forth herein.

44. A valid and reasonable business expectancy existed between Plaintiff and the licensor. The licensing agreement was fully negotiated and the licensor's counsel confirmed in writing that it was final and would be executed upon payment of the licensing fee. Investors had signed letters-of-intent to invest in Plaintiff at a $50,000,000 post-money valuation. Plaintiff was ready to close the licensing agreement with the licensor the week of June 9, 2025.

45. Defendants had knowledge of this expectancy through Confidential Information they obtained from Plaintiff, including the $7,000,000 upfront fee term.

46. Defendants intentionally and unjustifiably interfered with this expectancy by using Plaintiff's Confidential Information to approach the licensor directly, to outbid Plaintiff with a $10,000,000 upfront fee, to display Plaintiff's proprietary label designs as their own to third party vendors in preparation for a launch, and to divert the opportunity to their own licensing entity.

47. Defendants' interference caused the disruption and loss of Plaintiff's expected closing.

48. As a direct and proximate result, Plaintiff has suffered damages in an amount to be proven at trial. Defendants' interference was without justification or privilege

and employed wrongful means, including deception and misappropriation of Confidential Information.

49. Defendants' conduct was willful, malicious, and in reckless disregard of Plaintiff's rights. Plaintiff is entitled to punitive damages.

50. Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, pre-judgment and post-judgment interest, costs, and such other relief as the Court deems just and proper.

**COUNT II**
**FRAUD**

51. Plaintiff realleges and incorporates by reference paragraphs 1 through 50 as though fully set forth herein.

52. On December 12, 2024, by telephone calls directed to Klintworth in Illinois, Sultan represented that he and Patel would keep Plaintiff's information confidential and would sign NDAs.

53. On December 13, 2024, during an approximately twenty-minute group call with Klintworth and DeCicco, Sultan and Patel each confirmed that they had reviewed the materials, that they would keep them confidential, and that they would sign NDAs.

54. On May 29, 2025, Sultan texted Klintworth that he had a group that wanted to invest $5,000,000 into Plaintiff.

55. Throughout May 2025, by text messages and emails directed to Klintworth in Illinois, Sultan repeatedly acknowledged confidentiality and asked detailed questions about the terms, timing, valuation, structure, and closing logistics while failing to return an executed NDA and while delaying by citing pending property closings.

56. The statements identified in paragraphs 51 through 55 were false when made. Defendants intended to use Plaintiff's Confidential Information for their own benefit, to obtain Plaintiff's exact negotiated terms including the $7,000,000 upfront fee, to display Plaintiff's proprietary label designs to vendors in order to prepare their own launch, and to approach the licensor and outbid Plaintiff.

57. Defendants knew their statements were false or made them with reckless disregard for the truth. Defendants made the statements to induce Plaintiff to provide Confidential Information and to delay Plaintiff's ability to protect its position while Defendants solicited the licensor.

58. Plaintiff justifiably relied on Defendants' statements. Plaintiff provided Confidential Information on December 12, 2024, and December 13, 2024, to Defendants and continued to engage in discussions with Defendants in May 2025 and early June 2025 in reliance on Defendants' assurances of confidentiality and investment. Plaintiff postponed closing steps to accommodate Defendants' purported investment group, shared additional details regarding negotiated fee, timing, and investor pipeline, and refrained from soliciting alternative lead investors during the period of Defendants' assurances.

59. As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiff suffered damages including the loss of the licensing relationship with the licensor and the loss of Plaintiff's equity and future expected value.

60. Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, pre-judgment and post-judgment interest, costs, and such other relief as the Court deems just and proper.

## COUNT III
## MISAPPROPRIATION OF TRADE SECRETS (18 U.S.C. § 1836(b))

61. Plaintiff realleges and incorporates by reference paragraphs 1 through 60 as though fully set forth herein.

62. Plaintiff's Confidential Information constitutes trade secrets under federal law. It includes negotiated licensing terms such as fee amounts and timing, financial models and valuations, investor pipeline and commitments, strategy, vendor identities and pricing, launch plans, and proprietary label designs and brand assets not publicly disclosed. These materials derive independent economic value from not being generally known to persons who could obtain value from their use.

63. Plaintiff undertook reasonable measures to maintain secrecy, including affixing confidentiality legends, limiting distribution to a small group of evaluators on a need to know basis, repeatedly demanding execution of NDAs, obtaining express acknowledgments of confidentiality, and refraining from any public disclosure.

64. Defendants misappropriated Plaintiff's trade secrets by acquiring and using them without consent to approach the licensor, to outbid Plaintiff, and to copy and show Plaintiff's proprietary designs to vendors to promote a launch through their own licensing entities, by improper means including deception and breach of duties of confidentiality created by their assurances.

65. Defendants' misappropriation was willful and malicious.

66. Plaintiff suffered damages as a direct and proximate result.

67. Plaintiff seeks compensatory damages, exemplary damages to the extent permitted by statute, injunctive relief, attorneys' fees, pre-judgment and post-judgment interest, costs, and such other relief as the Court deems just and proper.

## COUNT IV
## BREACH OF FIDUCIARY DUTY (INCLUDING DUTY OF CONFIDENTIALITY)

68. Plaintiff realleges and incorporates by reference paragraphs 1 through 67 as though fully set forth herein.

69. By soliciting and accepting Plaintiff's Confidential Information for the stated purpose of evaluating an investment, repeatedly assuring confidentiality, and leveraging a longstanding relationship of trust, Defendants assumed duties of loyalty and confidentiality to Plaintiff.

70. Defendants breached those duties by using the Confidential Information for their own benefit and adverse to Plaintiff's interests, including copying and showing Plaintiff's proprietary designs and outbidding Plaintiff on the upfront fee.

71. The breach was willful and in bad faith.

72. Plaintiff suffered damages as a direct and proximate result.

73. Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, pre-judgment and post-judgment interest, costs, and such other relief as the Court deems just and proper.

## COUNT V
## CIVIL CONSPIRACY

74. Plaintiff realleges and incorporates by reference paragraphs 1 through 73 as though fully set forth herein.

75. Defendants agreed and combined to commit the wrongful acts alleged herein, including fraudulent misrepresentation, misappropriation of trade secrets, and tortious interference.

76. In furtherance of the conspiracy, Defendants performed overt acts including forming their own licensing entities, using Plaintiff's Confidential Information to outbid Plaintiff, and showing Plaintiff's proprietary designs to vendors.

77. Plaintiff suffered damages as a direct and proximate result.

78. At all relevant times, each Defendant acted as the agent, partner, co-conspirator, and or alter ego of the others, and within the scope and in furtherance of the conspiracy alleged.

79. Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, pre-judgment and post-judgment interest, costs, and such other relief as the Court deems just and proper.

**COUNT VI**
**COMMON LAW UNFAIR COMPETITION (Passing Off and Misappropriation)**

80. Plaintiff realleges and incorporates by reference paragraphs 1 through 79 as though fully set forth herein.

81. Defendants' copying and display of Plaintiff's proprietary label designs and their use of Plaintiff's Confidential Information to outbid Plaintiff constitute unfair competition including passing off and misappropriation.

82. Plaintiff suffered and will continue to suffer damages and irreparable harm.

83. Plaintiff seeks damages, injunctive relief, attorneys' fees, pre-judgment and post-judgment interest, costs, and such other relief as the Court deems just and proper.

**COUNT VII**
**UNJUST ENRICHMENT**

84. Plaintiff realleges and incorporates by reference paragraphs 1 through 83 as though fully set forth herein.

85. Defendants received benefits by obtaining and using Plaintiff's Confidential Information and business opportunity and by exploiting Plaintiff's proprietary designs.

86. It would be unjust for Defendants to retain those benefits.

87. Equity requires disgorgement.

88. Plaintiff seeks restitution and disgorgement, attorneys' fees, pre-judgment and post-judgment interest, costs, and such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendants as follows:

A. Enter judgment in favor of Plaintiff and against Defendants on all counts.

B. Award Plaintiff compensatory damages in an amount to be proven at trial, but not less than $50,000,000.

C. Award Plaintiff punitive or exemplary damages where permitted.

D. Order an accounting of profits derived from Defendants' misconduct.

E. Order Defendants to disgorge all benefits unjustly obtained and impose a constructive trust over any license, revenues, profits, or other benefits obtained from the usurpation.

F. Award Plaintiff its reasonable attorneys' fees and costs, including as authorized under the Defend Trade Secrets Act.

G. Award pre-judgment and post-judgment interest.

H. Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED this 29th day of April, 2026

45 SPIRITS, LLC

Plaintiff

By: _/Karen Arenas/______________________

Karen N. Arenas, # 6325514
ARENAS LAW
19 N. Green St
Chicago, IL. 60607
Telephone: 773-699-6972
karen@arenas-law.com
*Attorney for Plaintiff*