**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| 45 Spirits LLC, Richard DeCicco, and Timothy Klintworth, | ) | |
| Plaintiffs, | ) | No. 26 C 4902 |
| v. | ) | Judge Jorge L. Alonso |
| Zohair Sultan, Sameet Patel, 47 Spirits LLC, 47 Spirits Holdings LLC, and 47 Spirits Holdings MGR LLC, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs filed this lawsuit alleging that Defendants unlawfully used Plaintiffs' confidential information to usurp Plaintiffs' business opportunity. Defendants move to dismiss based on lack of personal jurisdiction. For the reasons stated below, Defendants' motions are denied.

**Background**

In May 2023, Plaintiffs Richard DeCicco (a Florida resident) and Timothy Klintworth (an Illinois resident) co-founded 45 Spirits (a Delaware LLC with a principal place of business in New York and an office in Illinois). R. 10 ¶¶ 26–28. They founded the company in anticipation of a licensing deal with the Trump Organization to sell Trump-branded vodka, and by May 2025, they had raised sufficient funds from outside investors to pay for the licensing fee and to begin operations. *Id.* ¶¶ 6–12. But on June 4, before the licensing deal had been finalized, the Trump Organization informed Klintworth that it would instead be selling the license to Defendant Sameet Patel's (a Florida resident) company 47 Spirits.[1] *Id.* ¶¶ 13–14.

[1] Defendants 47 Spirits LLC, 47 Spirits Holdings LLC, and 47 Spirits Holdings MGR LLC are all Delaware LLCs with principal places of business in Mississippi. R. 10 ¶¶ 31–33.

Klintworth first came into contact with Patel on December 12, 2024. On December 12, Klintworth made a phone call to Defendant Zohair Sultan (a Florida resident). R. 41-1 ¶ 7. During the call, Klintworth offered Sultan an opportunity to invest in 45 Spirits and encouraged Sultan to share the opportunity with his network. *Id.* Sultan then created a group text message with Klintworth and Patel, in which Sultan introduced Patel as a potential investor. *Id.* ¶ 8. Klintworth then initiated a conference call with Sultan and Patel during which Klintworth shared detailed information and documents about 45 Spirits' business plan and Sultan and Patel made verbal promises to keep the information confidential. R. 10 ¶¶ 58–60.

On May 13, 2025, Sultan texted Klintworth that he was interested in investing "a couple million" in 45 Spirits. *Id.* ¶ 63. Klintworth stated that 45 Spirits intended to finalize the licensing deal by May 16. *Id.* Sultan stated that he needed until the end of the month to free up the investment money. *Id.* Klintworth held off on closing the licensing deal with the Trump Organization because Sultan's promised investment would allow for more cash. *Id.* ¶ 64.

From May 13 through June 4, Sultan made repeated phone calls and sent repeated text messages to Klintworth (located in Chicago). *Id.* ¶ 65–70. During these calls, Sultan stated that he and Patel had assembled a group that was interested in investing several million dollars but that they needed until mid-June to send the money. *Id.* Sultan also repeatedly solicited confidential information about 45 Spirits. *Id*. During this time, as Klintworth delayed closing the licensing deal while awaiting Sultan and Patel's promised investment, Patel founded 47 Spirits on May 20. *Id.* As alleged, Sultan and Patel acted as "business partners" because Patel founded 47 Spirits based on the confidential information solicited by Sultan. *Id.* 47 Spirits ultimately entered into a deal with the Trump Organization ahead of 45 Spirits. *Id.* Plaintiffs then brought this lawsuit, alleging that Sultan and Patel had conspired to steal confidential information and usurp the deal.

## Discussion

### I. Personal Jurisdiction

"The plaintiff has the burden of establishing personal jurisdiction, and where, as here, the issue is raised by a motion to dismiss and decided on the basis of written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). On a motion to dismiss for lack of personal jurisdiction, courts "take as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff." *Id.*

The federal statutes serving as the basis for this litigation do not authorize nationwide service of process. As such, personal jurisdiction is governed by Illinois law, and the "Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause." *Id.* Under the Due Process Clause, the "key question" is "whether defendants have sufficient minimum contacts with Illinois such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 700–01 (citations omitted).

"Personal jurisdiction may be either general or specific." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). "Where a defendant has continuous and systematic contacts with a state, that defendant is subject to general jurisdiction regarding any action, even actions unrelated to those contacts." *Id.* (citations omitted). "But the threshold for general jurisdiction is quite high because the contacts must be sufficiently extensive and pervasive to approximate physical presence." *Id.* (citations omitted). The facts here clearly do not give rise to general jurisdiction, and Plaintiffs do not suggest otherwise.

Unlike general jurisdiction, "a court's exercise of specific jurisdiction requires that the defendant's contacts with the forum state relate to the challenged conduct." *Id.* There are "three essential requirements" for specific jurisdiction: (1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state, (2) the alleged injury must have arisen from the defendant's forum-related activities, and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice. *Id.*

As relevant, where the conduct of an agent allows for specific jurisdiction over the agent, and the agent's conduct is attributable to a principal, courts may exercise specific jurisdiction over the principal. *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 590 (7th Cir. 2021) ("While plainly authorized by the Illinois long-arm statute, we have never explicitly held [that] the attribution of an agent's conduct to a principal to establish specific personal jurisdiction comports with federal due process. We hold now that it does, joining other circuits that have recognized the same."). Here, Plaintiffs allege that Sultan acted as Patel's agent when Sultan made repeated phone calls and sent repeated text messages to Klintworth from May 2025 through June 2025. At this stage, the Court takes as true all well-pleaded facts alleged in the complaint. Based on Plaintiffs' allegations and for the purpose of ruling on these motions, the Court takes as true that (1) Sultan solicited confidential information from Klintworth with the intention of passing that information along to Patel, and (2) Sultan lulled Klintworth into delaying the finalization of the licensing deal to buy time for Patel to start 47 Spirits and usurp the licensing deal. Thus, for the purpose of ruling on these motions, the Court finds that Sultan acted as Patel's agent. As such, where the Court exercises specific jurisdiction over Sultan, the Court also exercises specific jurisdiction over Patel and, in turn, Patel's company 47 Spirits.

### 1. Purposeful Direction

The nature of the purposeful-direction inquiry "depends in large part on the type of claim at issue." *Felland*, 682 F.3d at 674. Here, Plaintiffs allege that Defendants committed various intentional torts.[2] *See* R. 10 ¶¶ 97–133 (asserting claims for misappropriation of trade secrets, copyright infringement, tortious interference with business expectancy, and fraud). Regarding intentional torts, a defendant's actions are purposefully directed at the forum state if they are "(1) intentional conduct . . . [that is] (2) expressly aimed at the forum state (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Felland*, 682 F.3d at 674–75 (citations omitted).

First, it is clear that Sultan engaged in intentional conduct. As stated above, from May 2025 to June of 2025, Sultan made repeated phone calls and sent repeated text messages to Klintworth during which he solicited confidential information about 45 Spirits for the purpose of passing that

[2] Plaintiffs also allege breach-of-contract and quasi-contractual claims. *See* R. 10 ¶¶ 134–156 (asserting a breach-of-contract claim and quasi-contractual claims of quantum meruit and unjust enrichment). There are two issues regarding these claims. First, Plaintiffs allege that the parties entered a contract when Defendants made a verbal promise to Klintworth that they would keep the information confidential, R. 45 at 14, but Defendants dispute that these verbal promises were sufficient to form a valid contract, R. 42 at 13. For the purpose of ruling on these motions, the Court takes as true that the parties entered an agreement. Second, the purposeful-direction analysis is different for breach-of-contract claims than for intentional-tort claims. *See Tamburo*, 601 F.3d at 702 ("Personal jurisdiction in breach-of-contract actions often turns on whether the defendant purposefully availed himself of the privilege of conducting business or engaging in a transaction in the forum state."). The Court, however, need not conduct a separate analysis. The intentional-tort claims anchor the complaint and under the doctrine of pendent jurisdiction, the Court exercises its discretion to hear the breach-of-contract and quasi-contractual claims because these claims and the intentional-tort claims arise out of a common nucleus of operative facts. *See Robinson Engineering Co. Pension Plan & Trust v. George*, 223 F.3d 445, 449 (7th Cir. 2000) ("The RICO claim arises out of the same nucleus of operative fact as the securities claims; it was therefore proper for the federal court to assert personal jurisdiction over George for [the RICO claim] as well, under the idea of pendent personal jurisdiction."); *see also Rice v. Nova Biomedical Corp.*, 763 F. Supp. 961, 966 (N.D. Ill. 1991), *aff'd*, 38 F.3d 909 (7th Cir. 1994) ("Under the doctrine of pendent personal jurisdiction, a court may exercise its discretion to hear claims as to which personal jurisdiction may otherwise be lacking if those claims arise out of a common nucleus of facts with claims as to which personal jurisdiction exists.").

information along to Patel. And during these calls, Sultan also lulled Klintworth into delaying the finalization of the licensing deal to buy time for Patel to start 47 Spirits and usurp the licensing deal. These were intentional acts. Second, it is also clear that Sultan expressly aimed his conduct at Illinois because he sent deceptive phone calls and deceptive text messages to Klintworth, who was located in Illinois. *See Felland*, 682 F.3d at 675–76 (finding that "lulling communications [sent to the plaintiff in the forum state] are relevant to the evaluation of the defendant's minimum contacts with the forum state for purposes of establishing personal jurisdiction in a case alleging a fraud"); *see also Wedi Corp. v. Seattle Glass Block Window, Inc.*, 2018 WL 1794771, at *3 (N.D. Ill. Apr. 16, 2018) (finding that the defendant "expressly aimed intentional conduct at Illinois by sending deceptive phone calls and electronic communications to defendant in Illinois."). Third, Sultan was aware that Klintworth lived in Illinois, *see* R. 41-1 ¶ 6, and thus Sultan had knowledge that the effects of his deceptive communications would be felt in Illinois because Klintworth would be injured in Illinois. As such, the Court finds that Sultan—acting as Patel's agent—purposefully directed his activities at Illinois.

**2. Cause of the Injury**

"Even where a defendant's conduct is purposefully directed at the forum state, the plaintiff must also show that his injury arises out of or relates to the conduct that comprises the defendant's contacts." *Felland*, 682 F.3d at 676. "If the defendant's contacts caused the plaintiff's alleged injury, that will, of course, suffice." *B.D. by & through Myers v. Samsung Sdi Co.*, 143 F.4th 757, 766 (7th Cir. 2025). Here, as alleged, there is no question that Sultan's contacts with Illinois—his communications with Klintworth—caused Plaintiffs' harm. If Sultan had not intentionally delayed Plaintiffs from closing the licensing deal, then Patel would not have been able to usurp it. As such, the Court finds that Plaintiffs' injuries "arise out of" Sultan's contacts with Illinois.

**3. Fair Play and Substantial Justice**

"The final inquiry in the specific-jurisdiction analysis is whether the exercise of personal jurisdiction over an out-of-state defendant would offend traditional notions of fair play and substantial justice." *Felland*, 682 F.3d at 677. The following factors are relevant in making this determination: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (citations omitted).

Applying these factors, the Court finds as follows. First, Defendants are unable to identify an "unusual burden" in defending this lawsuit in Illinois. *See NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 627 (7th Cir. 2022). Second, Illinois has an interest in overseeing relief for a resident plaintiff. Third, the Plaintiffs chose Illinois as their forum and this forum thus satisfies Plaintiffs' interest in obtaining relief. And fourth, this dispute could be efficiently resolved in any of the relevant states—Illinois, Florida, Delaware, or Mississippi. Ultimately, where defendants have purposefully directed their activities at forum residents, they "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Felland*, 682 F.3d at 677. Defendants have failed to articulate such a case.

The Seventh Circuit has explained that a defendant should "not be surprised" by the "jurisdictional consequences of [its] actions." *Id.* at 673 (citations omitted). Given that Sultan—acting as Patel's agent—repeatedly reached out to Klintworth with intent to cause harm and while knowing that Klintworth was located in Illinois, Defendants can hardly claim surprise at now being haled into Illinois. For these reasons, the Court finds that the exercise of personal jurisdiction over Defendant does not offend traditional notions of fair play and substantial justice.

## II. Failure to Join

In addition to disputing personal jurisdiction, Defendants argue that the case should be dismissed because Plaintiffs failed to name the Trump Organization as a defendant. R. 42 at 14. Under Federal Rule of Civil Procedure 19(a)(1), a party is required to be joined in the lawsuit if:

> (a) in that [party's] absence, the court cannot accord complete relief among existing parties; or
>
> (b) that [party] claims an interest relating to the subject of the action and is so situated that disposing of the action in the [party's] absence may (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Defendants' argument fails for the following reasons. First, the relief sought in this case involves the allocation of damages between Plaintiffs and Defendants and does not involve the Trump Organization. As alleged, there are no damages attributable to the Trump Organization. As such, Defendants are unable to show that the Trump Organization has an interest in this case and are thus unable to show that the Trump Organization is a required party under Rule 19. But second, even if the Trump Organization were a required party, then under the plain language of Rule 19, the proper remedy would be to join the Trump Organization rather than to dismiss the case.

## III. Propriety of Venue

Defendants also argue that this case should be transferred because the Northern District of Illinois is an improper venue. R. 42 at 15. Under 28 U.S.C. § 1391(b)(2), a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Venue "may be proper in more than one district, and the fact that a substantial part of the events also may have occurred elsewhere does not prevent venue from being proper" in this district. *Harlem Ambassadors Prods., Inc. v. ULTD Ent. LLC*, 281 F. Supp. 3d 689, 697

(N.D. Ill. 2017) (citations omitted). Critically, when "the underlying events consist of communications made by two parties located in separate districts," venue is proper in any district that a communication was "transmitted to or from" provided that there is a "sufficient relationship between the communication and the cause of action." *Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*, 80 F. Supp. 3d 870, 877 (N.D. Ill. 2015) (citations omitted). Sultan's phone calls and text messages to Klintworth—while Klintworth was located in Chicago in the Northern District of Illinois—are central to this case and thus provide a sufficient basis for the propriety of venue in the Northern District of Illinois.

## Conclusion

For the foregoing reasons, Defendant's motions [26] [41] to dismiss for lack of personal jurisdiction are denied. By 11/25/26, the parties shall submit a joint status report setting forth next steps in this case.

**SO ORDERED.**

**ENTERED: November 18, 2026**



**HON. JORGE L. ALONSO**
**United States District Judge**